Cleveland v. Carson.

William Cleveland, executor &c.,

v.

Henry A. Carson et al.

1. A testatrix, by her will, gave to A and B "the two certain mortgages which she, at the making of the will, held on their property." She in fact held three mortgages on the property—one for $320, another for $2,200 and the other for $1,404.—*Held,* that she intended to give to them all the mortgage debts—the three mortgages.

2. *Held, also,* that if it were held that the gift was of only two of the mortgages, the legatees under the bequest would have the right to select.

3. Evidence of instructions to the draftsman of the will held incompetent.

Bill for construction of will.  On final hearing on pleadings and proofs.

*Mr. W. Freeman,* for complainant.

*Mr. C. F. Hill,* for Henry A. and Philander B. Carson.

*Mr. D. A. Ryerson,* for Caroline, Philander and Granville W. Bodwell.

The Chancellor.

Charity Wilmot, of the city of Orange, died December 5th, 1882, leaving a will dated September 15th, 1881.  By it, after ordering payment of her debts and funeral expenses, including in the latter the cost of the erection of a plain headstone over her grave, she ordered that $300 be expended in the erection of headstones or a monument over the graves of her deceased sister, Sarah Bodwell, and the husband of the latter, Philander J. Bod-

well.   She then gave $350 to John Freeman, and $1,000 to her
sister, Jane Judd.   She then (by the fifth clause) gave to Henry
A. and Philander B. Carson, her great nephews, and to the sur-
vivor of them, "the two certain mortgages which she then held
upon their real estate in Orange, together with all interest due
and to grow due upon the same."   By the next, the sixth sec-
tion, she gave to each of those two legatees $1,200.   By the
seventh, she gave the use of two-thirds of all the residue to her
sister, Caroline Bodwell, for life, with remainder to Philander
and Granville W. Bodwell, children of the latter.   By the

NOTE.—In *Tomkins* v. *Tomkins*, cited in *Sleech* v. *Thornigton*, *2 Ves. Sr. 564,
19 Ves. 126, note,* a testator gave £50 to his sister, and to her three children £50
each, when, in fact, she had four children, and all of them were held to take.

In *Sleech* v. *Thornigton, 2 Ves. Sr. 560,* a gift "unto the two servants that
shall live with me at the time of my death, to be equally divided between
them," the testatrix having but two when she made her will, but afterwards
having taken another, who lived with her to the time of her death, was equally
divided among all three of them.

In *Stebbing* v. *Walkey, 2 Bro. C. C. 85, 1 Cox 250,* a bequest was made for
the two daughters of S., and if either should die before a specified time, the
whole was to go to the survivor, but if *both* died, it was to fall into the residue.
S. had three daughters, and all of them were held entitled.

In *Scott* v. *Fenoulhett, 1 Cox 79,* the gift was to each of the daughters of C. if
*both* or *either* of them should survive D.   C. had three daughters, all of whom
survived D., and were held equally entitled.

In *Garvey* v. *Hibbert, 19 Ves. 125,* M. gave to the three children of D. £600
each.   D. had four children, all born before the date of the will, who took
equally.

In *Lee* v. *Pain, 4 Hare 249,* a legacy was given to the three sisters of A., who
had four sisters, and all of them were let in.

In *Morrison* v. *Martin, 5 Hare 507,* the bequest was of £100 each to the two
children of testator's nephews, A and B.   A had three children and B two, and
each of the five children took £100.

In *Berkeley* v. *Palling, 1 Russ. 496,* a residue was to be divided into eight
equal shares, and disposed of as follows among the children of A: Two shares
to each of the two daughters, and one share to each of the three sons of A,
making together only seven shares.—*Held*, that the whole was divisible among
the children of A in seven parts, each daughter taking two-sevenths and each son
one.

In *Lane* v. *Green, 4 De G. & Sm. 239,* a testator bequeathed £100 apiece to
the four sons of A. H. by her former husband.   She had four children by such
former husband, but one of them was a daughter.—*Held*, that the daughter
took a legacy of £100.

Cleveland v. Carson.

eighth, she gave the use of the other third to Edward L. Hubbell for life, with remainder to his heirs-at-law. When the will was made, and at her death, she had three mortgages which had been given to her on the real property of the Carsons in Orange: one for $320, given by Philander J. Bodwell, July 1st, 1859; another for $2,200, given by the same person, May 8th, 1871, and the other for $1,404, given by Caroline A. Carson, July 1st, 1872, and the question presented is, whether any, and if so, what mortgages are given to the Carsons by the fifth clause of the will. They insist that all the mortgages are thereby given

In *Bassett's Estate, L. R. (14 Eq.) 54*, the bequest was to W. and E. B.'s three children, £10 each, and of certain furniture, equally to be divided among them. W. and E. B. had four children.—*Held*, that each of the four was entitled to a legacy of £10, and to a share of the furniture.

In *Eddels* v. *Johnson, 1 Giff. 22*, a testator having given to each of his six children a freehold estate, made a second devise to two of them, and then gave all his residuary estate unto his said four children, naming three only.—*Held*, that all the four (other than the two) were entitled.

. In *Spencer* v. *Ward, L. R. (9 Eq.) 507*, the gift was of £250 to each of the two children of S., who, in fact, had three children, and each of the three was held entitled to £250.

In *Lee* v. *Lee, 10 Jur. (N. S.) 1041*, testator gave his residuary estate to the four children of his deceased son Henry. His son Henry was still living, and had five children, all of whom were born at the date of the will, and known to the testator.—*Held*, that the five were entitled to the residue.

In *Harrison* v. *Harrison, 1 Russ. & Myl. 72*, the bequest was to the two sons and the daughter of A—£50 each. At the date of the will and at the death of testator A had one son and four daughters, and each one was held entitled to £50.

In *Daniell* v. *Daniell, 3 De G. & Sm. 337*, the bequest in 1831 was to the three children of W., who then had only three children, as testatrix knew, but who afterwards had six others, as the testatrix was informed. In 1836, 1842 and 1844, she made three new wills, revoking her former wills, and repeating the above gift.—*Held*, that all nine of the children were included.

In *Yeates* v. *Yeates, 16 Beav. 170*, the gift in 1829 was of "£40 a year to each of the seven children now living of J. S. Y.," who had nine children then living, and all were decreed to take.

In *McKechnie* v. *Vaughan, L. R. (15 Eq.) 289*, a bequest was "unto each of my four nieces, ————, the daughters of my deceased brother Joseph" &c. There were five daughters of Joseph, who all survived testator, and each of the five was held entitled.

In *Williams* v. *Lane, 2 Car. L. Repos. (266) 246*, a testator devised to his grandson "three hundred and fifty acres of land, being the upper part of a tract of

to them.  The Bodwells, on the contrary, not only deny that claim, but insist that the gift is void for uncertainty.  The court will not hold a devise or bequest to be void for uncertainty unless it is wholly unable to discover the testator's meaning. That the testatrix intended to give to the Carsons at least two of the mortgages which she held on their property in Orange, will admit of no dispute whatever.  She gives to them "the two mortgages" she held on their property.  She may have been in error as to the number of mortgages, or, what is far more probable, the will may fail to express her meaning.  It may be that

seven hundred acres; and to his two granddaughters the lower part of the same tract, to be equally divided between them," and the tract was found to contain, in fact, eleven hundred acres.  The grandson took the three hundred and fifty acres and the granddaughters three hundred and seventy-five acres each.

In *Coleman* v. *Eberly*, *76 Pa. St. 197*, a devise to E. of "that part of the M. farm at present occupied and farmed by B., containing eight fields," passed the farm to E., although it contained nine fields.

In *Vernor* v. *Henry*, *6 Watts 192*, a gift to "the two daughters of A," he having three, went to the three.

In *Shepard* v. *Wright*, *5 Jones Eq. 20*, a testator, having seven daughters, provided for one of them, Eliza by name, and then directed that the residue should be divided into nine equal parts, three of which were to go to his three sons, and the other six parts to his daughters.—*Held*, that each of the six daughters, excluding Eliza, should have one of the six remaining equal parts.

In *Kalbfleisch* v. *Kalbfleisch*, *67 N. Y. 354*, the testator, at the time of making his will, had nine children, all of whom survived him.  He gave to five of them pecuniary legacies for life, with remainder to their issue, and to his daughter Josephine he gave a specific legacy.  He then gave to his three remaining children certain real estate, "subject to the payment of $113,000 to the other *eight* of my children."  He also gave other property to his son Franklin, subject to the payment of $15,000 to his executors.  He then provided that the $113,000 and $15,000 should be taken as part of the amounts specifically devised to his children.—*Held*, that the word "eight" should be disregarded, but that Josephine could take no part of the $113,000 and $15,000.

In *Morrell* v. *Morrell*, *L. R. (7 P. D.) 68*, a testator gave instructions to the scrivener to give all his B. shares of stock to his nephews, but the scrivener, by mistake, inserted the word "forty" several times before the word "shares," in describing the gift.  The testator had, in fact, four hundred shares of B. stock.—*Held*, on proof of these facts, that the word "forty" should be struck out, and all of the stock was decreed to the nephews.  See *Eatherly* v. *Eatherly*, *1 Coldw. 461*.

In *Adams* v. *Logan*, *6 Mon. 175*, a testator made a devise to his wife and three children, if his wife should not be *enciente* at his death; but if she should,

Cleveland v. Carson.

through some misunderstanding of the draftsman and inattention on her part, an error has crept into the bequest in the statement of the number of the mortgages. But however that may be, she clearly meant to give at least two of the mortgages, and she has not designated which, if she intended to give only two. If the gift is to be confined to two, the legatees would themselves have the right of selection. " Where the gift," says Mr. Jarman, " comprises a definite portion of a larger quantity, it is not rendered nugatory by the omission of the testator to point out

then to her and his four children. He lived until his wife had had the fourth child and was *enciente* of the fifth.—*Held*, that all the five children should be included.

In *Hampshire* v. *Pierce, 2 Ves. Sr. 216,* under a gift to the four children of B., who, at the date of the will, had two children by a former husband and four by a second husband, all of whom survived her, parol evidence was admitted to show that testatrix meant the four children by the second husband. See *Osborne* v. *Varney, 7 Metc. 301; Savage* v. *Mears, 2 Rob. (Va.) 570; Gelston* v. *Shields, 16 Hun 143, 78 N. Y. 275.*

In *Brokaw* v. *Peterson, 2 McCart. 194,* under a gift to testator's three daughters, parol evidence that he meant to include the son of a deceased daughter was not admitted.

In *Johnson* v. *Goss, 128 Mass. 433,* under a gift of " one mortgage on H. B., of L.," when, in fact, testator had two mortgages executed by H. B., of L., the legatee was held entitled to but one, which she might select from the two.

In *Ward* v. *Sutton, 5 Ired. Eq. 421,* a residue was devised "to be equally divided between L. H.'s children, S. J. and her children, I. W.'s two children, E. and L., and K.'s children, to be equal in said residue with L. H.'s and S. J. and her children, and my nephew, S., to be equal with the *two* K. children," and there were three K. children.—*Held,* the court could not strike out the word "two" in the bequest to S., but to effect the intention that word must be referred to W.'s children.

In *Selsey* v. *Lake, 1 Beav. 146,* a rent charge was given to trustees during the life of A and her five daughters, in trust to 'pay to A for life, and after her death upon "trust for her said daughters and the survivors and survivor, and while more than one should be living to be divided between them in equal shares." A had five sons and one daughter, and the daughter alone was held entitled.

In *Wrightson* v. *Calvert, 1 Johns. & Hem. 250,* under a bequest as follows: "I give to the two grandchildren of A, £19 19s. each. They live near B.," it appearing that A had three grandchildren, of whom two only lived near B. —*Held,* that the third grandchild was not entitled.

In *Hull's Estate, 21 Beav. 314,* bequest to ·all testator's nephews and nieces living at the death of his wife, *namely,* all the children of my brother, S. H.,

Cleveland v. Carson.

the specific part which is to form such portion; the devisee or legatee being in such case entitled to select." *1 Jarm. on Wills 320.* This rule was applied in *Love* v. *Stiles, 10 C. E. Gr. 381,* and *Youmans* v. *Youmans, 11 C. E. Gr. 149.* But the testatrix did not intend to limit the gift to two only of the mortgages. This is clearly indicated by her language. It is "the two certain mortgages which I now hold upon their real estate in Orange aforesaid, together with all interest due and to grow due upon the same." She evidently meant to give them all her mortgage debt upon the property, and made a mistake in stating the number of the mortgages. Had she intended not to give all, but only to give two of the three, she would have designated the two which she meant to give, for the mortgages are of very different

&c. [naming the greater part but not all of his brothers and sisters, and excepting one of his nieces by name, and giving her a legacy]—*Held,* that only the children of the brothers and sisters specifically named took.

In *Glanville* v. *Glanville, 33 Beav. 302,* a testator having four nephews and a niece, children of his brother Richard, bequeathed some stock, "in trust for my four nephews and niece, children of my brother Richard, namely, Robert, Richard, Francis and Margaret" [omitting Thomas, the fourth nephew]. *Held,* that Thomas could not be admitted to participate in the bequest.

In *Newman* v. *Piercy, L. R. (4 Ch. Div.) 41,* testatrix, by will made in 1873, bequeathed to each of the three children of Mrs. W., widow of W. W., £100. W. W. died in 1857, leaving a widow and three children, of whom one died in 1870, and two survived. Mrs. W. married again in 1858, and had six children by that marriage living in 1873. The testator knew there were children by the second marriage, but did not know their number.—*Held,* that the two surviving children of W. W. were alone entitled. See *Morton* v. *Morton, 2 Swan 318; Jones's Appeal, 48 Conn. 60.*

In *Goddard* v. *Brown, 12 R. I. 31,* under a bequest to trustees, "to pay over and convey absolutely all my manufacturing property, consisting of all my interest and shares in the L. Co., the B. Co. and the H. Co."—*Held,* to include only the three corporations named, although testator owned other manufacturing property.

In *Emery's Estate, L. R. (3 Ch. Div.) 300,* a testatrix, who died in November, 1874, by her will of January, 1874, bequeathed to each of the three children of her niece £1,000. There was a codicil in June, 1874, confirming this gift. At the date of the will the niece had three children living, the youngest being three years old, and a fourth child *en ventre sa mère* at the time, and born in July, 1874.—*Held,* that only the three children born at the date of the will were entitled. See *Sherer* v. *Bishop, 4 Bro. C. C. 55; Starling* v. *Price, 16 Ohio St. 27.*—REP.

amounts—$320, $2,200 and $1,404. A mere mistake in the subject of a gift will not invalidate it. *Shep. Touch. 432 ; Ward on Leg. 202, 203.*

In *Sampson* v. *Sampson, L. R. (8 Eq.) 479,* the testator gave his four leasehold messuages in Laxton Place, with other tenements, in trust, out of the rents to pay the ground rents of the whole, and of another tenement in York Passage comprised in the lease under which two of the houses in Laxton Place were held, and to apply the surplus on certain trusts. He had five messuages in Laxton Place, held under four leases. It was held on the context that the five messuages passed under the bequest. In *Richards* v. *Patterson, 15 Sim. 501, 11 Jur. 113,* the testator bequeathed to his wife and another person all his property in the Austrian and Russian funds, "and also that vested in a Swedish mortgage security." He had several Swedish mortgages. It was held that the gift was not void for uncertainty, and that all his property invested in Swedish mortgage securities passed under the bequest. The testatrix, in the very next clause to that under consideration, gives to the same legatees $1,200 apiece. This fact makes it very improbable that she intended to require them to pay off one of the mortgages, and strengthens the conviction that she did not. It is, however, quite enough to say that it is clear, from the language of the bequest itself, that she meant to give them all the mortgage debts she had on their property. There is some evidence (adduced by the Carsons) to prove that the first mortgage (of $320) was included in the third, and testimony also as to the instructions of the testatrix to the draftsman of the will, but the former is not positive enough to amount to proof, and the latter is incompetent. The executor should deliver up to the Carsons all three of the mortgages, to be canceled.